May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Hamer. Mr. Hamer appeals the decision of the United States Court of Appeals for Veterans Claims. In this case, Your Honor, there are two issues. The first issue is an issue that deals with the Court's jurisdiction to undertake a review on a basis other than the basis that was relied upon by the administrative agency which made the decision which was on appeal. That issue is controlled by the United States Supreme Court's decision in Chenery. We believe that the Veterans Court violated the Chenery Doctrine by relying upon a ground that was not the basis for the Board's decision. It is clear from the decision below that the Board relied upon a VA precedential opinion which was in fact expressly sought by the Board in this case in order to make its decision. Mr. Carpenter, at the bottom you're asking for a TDIU for a period of time when Mr. Hamer was working. Isn't that right? No, Your Honor, that's not correct. I am asking for what the Board granted and the VA failed to properly implement, which was the restoration of his unlawfully terminating. You're going from August 1989 to April 2000, and you are asking for TDIU for much of that period. No, Your Honor, I am not. Mr. Hamer did not make a claim for that. Mr. Hamer's claim was not in fact a claim. It was a request for revision of a May 1985 decision which had unlawfully terminated his award of a total rating. There is no dispute, there is no factual dispute that Mr. Hamer was unlawfully terminated in May of 1985. There is no factual dispute that at the time he was terminated he was entitled to receive that. But didn't he get a retroactive TDIU from the time when he was improperly terminated to a subsequent time which actually included when he was working full-time? He did not get the second period. That is what is at issue in this appeal is whether or not under the proper interpretation of the clear and unmistakable error statute and regulation, the VA is capable of partially revising a decision, which is what they did in this case, and starting anew with an interim decision based upon events that were not before the VA in May of 1985. However, the Chenery Doctrine requires the Veterans Court to address the basis for the revision as a basis for the decision to deny revision. The basis to deny revision in this case was the VA's reliance upon a VA General Counsel's opinion. The VA General Counsel's opinion dealt with the notice requirements of 38 CFR 3.105E and whether or not those notice requirements did or did not apply in this case. When the Veterans Court decided this case, the Veterans Court decided this case on the basis of staged ratings, which is what you suggested, Judge Lori, was the basis for the ability of the VA to affirm the decision of the VA to decide anew the question of entitlement to a total rating based upon unemployability. That would be a new claim. That would be a new matter which would have had to have been raised, which was not raised because the VA had unlawfully terminated his entitlement to a total rating, the irony of which in this case is that the veteran's employment was to go to work as a veteran service organization representative in order to ultimately determine that his total rating had been unlawfully terminated. He then filed a request for revision of that action in May of 1985, and that was denied by the VA. It was ultimately granted by the Board. The Board then remanded it for implementation of their revision of the May 1985. And what did they do in May of 1985? They restored it, but then they decided anew a question that was simply not before them. A claim had not been made by anyone, and the decision that was relied upon by the Board was based upon a VA general counsel's opinion which dealt with notice. The Veterans Court relied upon stage ratings. Stage ratings were not part of the analysis or the basis for the decision by the Board, and therefore that constitutes a general reviolation. Mr. Hamer did present to the Veterans Court a question of whether or not the Board correctly applied the controlling statute and regulation. That controlling statute is 38 U.S.C. 5109 A, subsection B, and 38 CFR 3.105 A is the predecessor regulation that deals with a request for revision or what is commonly referred to as a claim of clear and unmistakable error. The question that was presented by Mr. Hamer to the Veterans Court was whether or not under that statute and regulatory scheme, what the VA did was in accordance with or a correct application of that statute and regulation. That was not a correct application because the statute requires, as does the regulation, that a revised decision shall have the same effect as if the corrected decision had been made on the date of the reversed or prior decision. That is not what took place here. If that had been what had taken place, then his total rating would have been fully restored and not adjudicated again. This raises the fundamental question of whether or not the VA gets another bite of the apple when they have been found to have made a clear and unmistakable error based upon an intervening set of facts that in this case happened four years after the fact. I believe that the Veterans Court did not correctly interpret the statute and regulation and that the statute and regulation do not contemplate a new revision or a new adjudication. There is no process that exists under the existing statutory and regulatory scheme for such a process. If there are no further questions from the court, I'll be happy to reserve the balance of my time since I realize you're running a bit late on your docket this morning. Thank you, Mr. Carpenter. Mr. Hockey? May it please the court. We see no Chenery violation here. The only difference between the board's decision, which relied on the general counsel's opinion, and the Veterans Court's decision was that the Veterans Court had the benefit of its recently decided, at that time, O'Connell and Reisenstein decisions as well as this court's decision in Reisenstein, which all dealt with the same 30105E notice error. The argument is how do you read 3.105A and 3.105E together? As Mr. Carpenter accurately stated, 3.105A talks about reinstituting the Q awards on the effective date, basically, that it was taken away. As an aside, that's what happened here. As Judge Lurie pointed out, the effective date for the Q reversal decision was the May 1985 date. That was the same date that the Q was incurred. But in this case, the VA had evidence, uncorroborated, unchallenged, unrebutted evidence, that for 11 years after that date, starting five years later, so in 1989, 1990, Mr. Hamer was fully employed. And the evidence was unrebutted that he then therefore could not have satisfied the TDIU total individual unemployability requirements, being fully employed. So the question is how do we take this information into account? And because a Q revision is a retroactive award, the Veterans Court correctly observed that this court's decision in Reisenstein effectively answers the question in which Reisenstein, this court, dealt with a live claim. And what do you do? Because sometimes these claims take a while to- So it would have been incorrect to award him TDIU from 1990 to 2000 because he was actually working. He was actually working. He couldn't have satisfied the statutory requirement. And 3.105A says give it the same effect as if the, quote, corrected decision had been made on the date. So I assume that you would say that that regulation means that we should be only reversing and correcting decisions. And if it would amount to giving him benefits he's not entitled to, that wouldn't be the corrected decision under the regulation? That's one way to look at it, yeah. That language in B is an effective date type provision. So what you want to do is fix what went wrong with the first Q decision. But there's nothing in that regulation that says subsequent information in possession of VA, which indicates that that award can't continue indefinitely, as is being argued in this case, has to be taken into account. And there's nothing in the statute, either the 5109A statute or the regulation, that would preclude consideration of that evidence. Well, in general, isn't it the case that if you're going to discontinue benefits you have to give notice and opportunity to be heard? And that's the 3.105E issue that this court dealt with in Reisenstein. And the argument in Reisenstein was in a similar situation, but again, with a live claim, you had a 10-year period of benefits you wanted to retroactively award in a lump sum payment. But during that 10-year period, the condition that the individual was suffering from had gone up and down. So he wasn't entitled to 100% rating the entire period. This is the staged rating. Which, it's been done a long time, but the term staged rating really didn't come into VA parlance until 1999, and sort of has gotten a jolt with the O'Connell-Reisenstein cases that came out in 07 and 08. But yes, that's taken into account. In other words, whenever you're awarding benefits, obviously, you have to award them based upon the facts found, the effective date, and how do the facts determine whether the level is a certain level, the timing of that level. And so what this court said in Reisenstein, when awarding a retroactive payment, is you take all that information into account, and you can award what's been called a staged rating that goes up and down over a period of time. And the reason it doesn't violate these regulations, the plain language of 3.105e, has the terms currently being made. The idea, obviously, behind the regulation is to make sure that those who are in receipt of benefits do not have them deprived without having A, an opportunity to adjust to the deprivation, or B, an opportunity to respond to the proposed deprivation. And when you're talking about a retroactive payment, whether it's in a live case like in Reisenstein or a queue case like this one, there is no current payments being received. This is a retroactive lump sum payment, so there's no reliance upon any kind of continuing payment. And he has already had the opportunity to demonstrate that he was entitled to those payments for the whole period of which he claims, the 15-year period in this case, but the record shows and the board found, as a matter of fact, that he didn't contest nor ever challenge the fact that he was fully employed from 1989 to 2000, 2001, I think. So what you have here is simply nothing would preclude what the VA did. Everything requires what the VA did. They don't really have a statutory basis to award benefits if the individual plainly cannot meet the requirements for TDIU. He could not meet them for the 10-year period in question here. They awarded a retroactive payment under the queue statute, which took into account that information, and we think that that was the appropriate thing to do. Thank you, Mr. Hawkey. Mr. Carpenter. The flaw in the government's analysis is that they compare queue to awarding versus restoring. The queue was in the unlawful termination. That queue error was established. There is no awarding in the error that was committed. All that was required was restoration. Would you ask this court and the court below to disregard his ineligibility for TDIU for the 10- or 11-year period that he fully worked? Yes. On what basis? Statutory basis. Because it's not relevant under the statute. The VA has the ability and has never chosen to promulgate regulations about this meaning of their regulation or of the same essential language that was adopted by Congress in the statute, about same effect. If they wanted to interpret that to do as they had done in this case, that's certainly within their discretion. But as it stands, we have a statute that is predicated upon a regulation that preexisted, and that statutory language simply says it shall have the same effect. The same effect at law is the restoration of an unlawfully terminated award. That's all that the statute and regulation permit. Mr. Hockey concedes that that should be done and was done, but then he's saying at the point that the evidence becomes apparent that he does no longer qualify, they can also engage in what we call some kind of staged analysis. And you do that when you're making an award. If this was an award case, then stage rating is appropriate. This is not an award case. This is a restoration case. If you will, no thinking is required. No stage rating analysis is necessary. He was entitled to it. They took it away. They have to restore it. Now, the question then becomes, is that fair? But fair is not part of this. This is an interpretation of the statutory and regulatory language. The VA wants another bite of the apple. They want an opportunity to say, but we now have discovered evidence. Had they not made the error in the first place, when Mr. Hamer went to work in 1989, his benefits would have been ended because he would have returned to substantial gainful employment, and they would have ended for that approximate 10, 11-year period. But for the error, he lost the right to that total rating from 1985 to 1989, and then was forced to go back to work. And he was able to find employment. I would frankly argue that it was sheltered employment, but the fact of the matter is he found employment. He found an employer to pay him a wage, and he got that wage. What we're talking about here is the interpretation of the VA's statute and the VA's regulation. And the statute and the regulation say same effect. When you have the same effect of restoration, you restore what you unlawfully took away. Thank you, Mr. Carpenter. Thank you all very much.